IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 14-cv-01254-MSK

MARIO MENDOZA,

      Applicant,

v.

RICK LINE, Warden, Arkansas Valley Corr. Fac., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant

to 28 U.S.C. § 2254 (ECF No. 1) ("the Application") filed *pro se* by Applicant Mario Mendoza.

Respondents have filed an Answer to Application for Writ of Habeas Corpus (ECF No. 19) ("the

Answer") and Mr. Mendoza has filed Applicant's Reply to Respondents' Answer to Application

for Writ of Habeas Corpus (ECF No. 22) ("the Traverse").  After reviewing the record, including

the Application, the Answer, the Traverse, and the state court record, the Court FINDS and

CONCLUDES that the Application should be denied and the case dismissed with prejudice.

## I.  BACKGROUND

Mr. Mendoza is challenging the validity of his convictions and sentence in Adams

County District Court case number 04CR1277.  The factual background of Mr. Mendoza's

crimes and convictions was summarized by the Colorado Court of Appeals in state court

postconviction proceedings as follows:

> At the request of the owner's girlfriend, defendant

> attempted to physically remove the victim from the owner's condominium. Defendant forced the victim from the kitchen to the living room with a rifle or shotgun, grabbed the victim in an attempt to push him out through the front door, and struck the victim in the stomach with the butt of the gun. The victim was then fatally shot once in the chest.
>
> A jury convicted defendant of felony murder and attempted second degree kidnapping, and the court sentenced defendant to life in the custody of the Department of Corrections.

*People v. Mendoza*, No. 11CA1411, slip op. at 1 (Colo. App. Mar. 28, 2013) (ECF No. 11-7 at 2). The judgment of conviction was affirmed on direct appeal. *See People v. Mendoza*, No. 05CA1424 (Colo. App. Oct. 25, 2007) (ECF No. 11-3). On March 10, 2008, the Colorado Supreme Court denied Mr. Mendoza's petition for writ of certiorari on direct appeal. (*See* ECF No. 11-5.)

On December 18, 2008, Mr. Mendoza filed in the trial court a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure. (*See* ECF No. 11-1 at 8.) Counsel was appointed to represent Mr. Mendoza in the state court postconviction proceedings and counsel filed a supplemental postconviction motion. (*See id.* at 7-8.) Following a hearing, the trial court denied the Rule 35(c) motion. (*See id.* at 6.) On March 28, 2013, the Colorado Court of Appeals affirmed the trial court's order denying the Rule 35(c) motion. (*See* ECF No. 11-7.) On December 9, 2013, the Colorado Supreme Court denied Mr. Mendoza's petition for writ of certiorari in the state court postconviction proceedings. (*See* ECF No. 11-9.)

The Application was filed on May 1, 2014, and Mr. Mendoza asserts five claims for relief. He contends in claim 1 that the evidence was insufficient to support his convictions in violation of his right to due process. He asserts in claim 2 that the trial court failed to adequately instruct the jury on the meaning of the phrase "from one place to another" as part of the

instruction for second degree kidnapping in violation of his right to due process.  In claim 3 Mr.

Mendoza contends that the trial court erred in refusing to instruct the jury on the lesser offenses

of reckless manslaughter and criminally negligent homicide in violation of his constitutional

right to a fair trial.  He asserts in claim 4 that prosecutorial misconduct during closing arguments

violated his constitutional right to a fair trial.  Finally, Mr. Mendoza contends in claim 5 that he

received ineffective assistance of counsel because (a) trial counsel based critical decisions

regarding the theory of defense on an incorrect interpretation of the law governing attempted

second degree kidnapping; (b) trial counsel failed to request proper jury instructions regarding

attempted kidnapping; and (c) counsel on direct appeal failed to properly frame the claim of

instructional error regarding attempted second degree kidnapping.  The Court previously entered

an Order to Dismiss in Part (ECF No. 17) dismissing claim 3 as unexhausted and procedurally

barred.

## II.  STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Mendoza liberally

because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)

(per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should

not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with

respect to any claim that was adjudicated on the merits in state court unless the state court

adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  Mr. Mendoza bears the burden of proof under § 2254(d).  *See Woodford v.*

*Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S. Ct.

770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an

unreasonable legal or factual conclusion does not require that there be an opinion from the state

court explaining the state court's reasoning."  *Id.* at 784.  Thus, "[w]hen a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed that the state

court adjudicated the claim on the merits in the absence of any indication or state-law procedural

principles to the contrary."  *Id.* at 784-85.  Even "[w]here a state court's decision is

unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing

there was no reasonable basis for the state court to deny relief."  *Id.* at 784.  In other words, the

Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."

*Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the

state court's summary decision unless [the Court's] independent review of the record and

pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies

clearly established federal law, or is based on an unreasonable determination of the facts in light

of the evidence presented."  *Id.* at 1178.  "[T]his 'independent review' should be distinguished

from a full de novo review of the petitioner's claims."  *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to

28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold

question the Court must answer under § 2254(d)(1) is whether Mr. Mendoza seeks to apply a

rule of law that was clearly established by the Supreme Court at the time his conviction became

final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers

to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the

relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in
> cases where the facts are at least closely-related or similar to the
> case *sub judice*.  Although the legal rule at issue need not have had
> its genesis in the closely-related or similar factual context, the
> Supreme Court must have expressly extended the legal rule to that
> context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal

law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

     If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that clearly

established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that contradicts the
> governing law set forth in Supreme Court cases"; or (b) "the state
> court confronts a set of facts that are materially indistinguishable
> from a decision of the Supreme Court and nevertheless arrives at a
> result different from [that] precedent."  *Maynard* [*v. Boone*], 468
> F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and
> brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word
> 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually
> opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the correct
> governing legal rule from Supreme Court cases, but unreasonably

applies it to the facts.  *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id*. at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S. Ct.

6

at 786 (stating that "even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a
> state prisoner must show that the state court's ruling on the claim
> being presented in federal court was so lacking in justification that
> there was an error well understood and comprehended in existing
> law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).

*See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows the

Court to grant a writ of habeas corpus only if the relevant state court decision was based on an

unreasonable determination of the facts in light of the evidence presented to the state court.

Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are

correct and Mr. Mendoza bears the burden of rebutting the presumption by clear and convincing

evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v.

Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was

contrary to, or involved an unreasonable application of, clearly established federal law."  *Bland

v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).  "Unless the error is a structural defect in the

trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ."  *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-

22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht*

anytime it finds constitutional error in a state court proceeding regardless of whether the state

court found error or conducted harmless error review).   Under *Brecht*, a constitutional error does

not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on

the jury's verdict.   *Brecht*, 507 U.S. at 637.   "A 'substantial and injurious effect' exists when the

court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."   *Bland*, 459

F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).   "Grave doubt" exists when

"the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of

the error."   *O'Neal*, 513 U.S. at 435.   The Court make this harmless error determination based

upon a review of the entire state court record.   *See Herrera v. Lemaster*, 225 F.3d 1176, 1179

(10th Cir. 2000).

    If a claim was not adjudicated on the merits in state court, and if the claim also is not

procedurally barred, the Court must review the claim *de novo* and the deferential standards of §

2254(d) do not apply.   *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.   MERITS OF APPLICANT'S REMAINING CLAIMS

## A.   Claim 1

    Mr. Mendoza contends in claim 1 that the evidence was insufficient to support his

convictions in violation of his right to due process.   He specifically argues in support of claim 1

that the evidence was insufficient to demonstrate an attempted kidnapping because the

prosecution failed to present evidence showing he "engaged in a substantial step that was

'strongly corroborative of the actor's purpose to complete the commission of the offense.'"

(ECF No. 1 at 8.)   He further argues that, because the attempted kidnapping offense "was the

predicate for the felony murder, that conviction must also fall."   (ECF No. 22 at 14.)

    The standard for sufficiency of the evidence, which was clearly established when Mr.

Mendoza was convicted, is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 324, n.16).  To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).  Finally, "[s]ufficiency of the evidence is a mixed question of law and fact." *Maynard*, 468 F.3d at 673. The Court must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts." *Id.*

The Colorado Court of Appeals addressed the merits of Mr. Mendoza's claim challenging the sufficiency of the evidence and reasoned as follows in rejecting the claim:

A.  Attempted Second Degree Kidnapping

Second degree kidnapping is committed when a person "knowingly seizes and carries any person from one place to another, without his consent and without lawful justification." § 18-3-302(1), C.R.S. 2007.

Attempted second degree kidnapping is an inchoate crime which requires the same kind of culpability necessary for second degree kidnapping combined with conduct that amounts to a

substantial step toward the commission of the completed offense. § 18-2-101(1), C.R.S. 2007; *Apodaca v. People*, 712 P.2d 467, 475 (Colo. 1985). To prove the attempted offense, the prosecution need not prove every element of second degree kidnapping, but rather, only that the defendant possessed the required intent and took a substantial step toward commission of the crime. *People v. Joyce*, 68 P.3d 521, 525 (Colo. App. 2002). In this context, a substantial step means conduct that strongly corroborates the actor's purpose to forcibly or otherwise seize and carry away any person from one place to another without the person's consent and without lawful justification. *Apodaca*, 712 P.2d at 475 n.10; *People v. Lahr*, 200 Colo. 425, 427, 615 P.2d 707, 708 (1980). A person acts knowingly, with respect to a result of his or her conduct, when he or she is aware that the conduct is practically certain to cause the result. § 18-1-501(6), C.R.S. 2007.

Here, defendant arrived at the condo after the girlfriend sought his help to remove the victim from the premises. He forced the victim at gunpoint and against his will out of the kitchen into another part of the condo. Defendant then pushed the victim toward the front door, and hit him in the stomach. From this evidence, the jury could have found beyond a reasonable doubt that defendant, by forcing the victim at gunpoint and against his will out of the kitchen and toward the front door, knowingly engaged in a substantial step toward the completion of the crime of second degree kidnapping.

Defendant argues that, for his conviction to stand, the evidence must support a showing that the movement substantially increased the risk of harm to the victim. We reject this argument for two reasons. First, a showing that the movement substantially increased the risk of harm to the victim is not required in attempted second degree kidnapping cases. *See People v. Fuller*, 791 P.2d 702, 706 (Colo. 1990) (to satisfy the elements of *second degree kidnapping*, the prosecution must establish that the victim was moved and that the movement substantially increased the risk of harm to the victim); *see also Joyce*, 68 P.3d at 525 (to prove attempted second degree kidnapping, the prosecution need not prove every element of the completed offense). Second, notwithstanding whether there must be a showing that the movement substantially increased the risk of harm to the victim to support an attempted kidnapping conviction, a reasonable jury could have inferred that the movement here increased the victim's risk of harm because defendant trained a loaded firearm on the

10

victim, and ultimately shot and killed the victim.

We therefore conclude that, taking the evidence in the light most favorable to the prosecution, a reasonable jury could have found beyond a reasonable doubt that defendant's actions support an attempted second degree kidnapping conviction.

B.  Felony Murder

A person commits felony murder if "he or she commits or attempts to commit arson, robbery, burglary, kidnapping, [or] sexual assault . . . and, in the course of or in furtherance of the crime that he or she is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone." § 18-3-102(1)(b), C.R.S. 2007.

As discussed above, there was sufficient evidence to support defendant's conviction for attempted second degree kidnapping.  In addition, the victim died as a result of being shot during the attempted kidnapping.  Accordingly, there was sufficient evidence to support a jury finding beyond a reasonable doubt that defendant committed felony murder.

(ECF No. 11-3 at 3-6.)

Mr. Mendoza fails to demonstrate that the decision of the Colorado Court of Appeals is contrary to clearly established federal law.  He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.

Mr. Mendoza also fails to demonstrate that the decision of the Colorado Court of Appeals is an unreasonable application of clearly established federal law.  Mr. Mendoza primarily argues that the evidence was insufficient because there was no evidence the victim's movement substantially increased the risk of harm to the victim.  However, the Court is bound by the state court's ruling that such evidence was not necessary under state law.  *See Bradshaw*, 546 U.S. at

11

76. Under these circumstances, Mr. Mendoza fails to demonstrate that the jury's finding "was so insupportable as to fall below the threshold of bare rationality" required under *Jackson*. *Coleman*, 132 S. Ct. at 2065. Furthermore, the state court's alternative conclusion that "a reasonable jury could have inferred that the movement here increased the victim's risk of harm because defendant trained a loaded firearm on the victim, and ultimately shot and killed the victim" (ECF No. 11-3 at 5-6) also is not an unreasonable application of *Jackson*. Thus, Mr. Mendoza fails to demonstrate the state court's ruling regarding the sufficiency of the evidence "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87.

For all of these reasons, the Court finds that Mr. Mendoza is not entitled to relief on claim 1.

**B. Claim 2**

Mr. Mendoza contends in claim 2 that the trial court failed to adequately instruct the jury on the meaning of the phrase "from one place to another" as part of the instruction for second degree kidnapping in violation of his right to due process. Mr. Mendoza argues as follows in support of claim 2:

> The jury in this case received only the stock instruction on the elements of second degree kidnapping, which defined the element of asportation as "seized and carried any person from one place to another." No further definition of this element was sought or given. Defendant contends that, under the circumstances of this case, the trial court's failure to define the phrase "from one place to another" was plain error that requires reversal of the convictions for second degree kidnapping and felony murder.

> . . . .

> In the present case, the jury might well have rejected the

12

prosecution's theory that Defendant intended to move [the victim] to a vehicle or other location where he could be killed, and instead, accepted the testimony of several persons that the objective was simply to evict him from the condo.  The likelihood of this is somewhat enhanced by the fact that the jury acquitted Mr. Mendoza of both first degree (deliberated) and second degree murder.  The question would then be whether the movement was simply incidental to the eviction and not sufficiently substantial to qualify as a movement "from one place to another" within the meaning of the statute and whether the movement entailed an increased risk of harm.  This was particularly important in view of the fact that there was a tremendous amount of conflicting evidence as to the details of what actually happened inside the condo.

. . . .

. . . Given the nature of the evidence and the conflicts within it, the broad nature of the theory of prosecution and the potentially misleading comments made by the prosecutor at closing, there was a very real possibility that the trial court's failure to provide any further definition of the element in question effectively reduced the prosecution's burden of proof, in violation of Defendant's due process rights under the United States Constitution and permitted the jury to find the element of asportation on legally insufficient grounds.

(ECF No. 22 at 15-17 (citation to the record omitted).)

A jury instruction violates due process if it fails to give effect to the requirement that the State prove every element of the offense.  *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam).  However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process."  *Id.* (internal quotation marks omitted).  Thus, the particular instruction being challenged "may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  *Id.* (internal quotation marks omitted).  "If the charge as a whole is ambiguous, the question is whether there

is a reasonable likelihood that the jury has applied the challenged instruction in a way that

violates the Constitution." *Id.* (internal quotation marks omitted). "[T]he proper inquiry is not

whether the instruction 'could have' been applied in an unconstitutional manner, but whether

there is a reasonable likelihood that the jury *did* so apply it." *Victor v. Nebraska*, 511 U.S. 1, 6

(1994).

The Colorado Court of Appeals rejected Mr. Mendoza's jury instruction claim based on

the following reasoning:

> Instructions framed in the language of the statute are
> generally sufficient. *People v Ramirez*, 18 P.3d 822, 827 (Colo.
> App. 2000). Here, the second degree kidnapping instruction
> tendered at trial is modeled after the pattern jury instruction, which
> is framed in the language of section 18-3-302(1). *See* CJI-Crim.
> 11:04 (2007). Moreover, the phrase in question, "from one place
> to another," is a commonly understood phrase, with no specialized
> meaning, and jurors could construe it based on their own
> knowledge and experience, without a definitional instruction. *See*
> *People v. Dunlap*, 975 P.2d 723, 751 (Colo. 1999) (phrases and
> terms with commonly understood meanings do not need to be
> expressly defined); *see also People v. Wilford*, 111 P.3d 512, 517
> (Colo. App. 2004) (because the term "confederate" is not highly
> technical and is within the comprehension of the jury, no special
> defining instruction was needed). Therefore, no additional
> definition was required.

(ECF No. 11-3 at 8.)

Mr. Mendoza fails to demonstrate that the decision of the Colorado Court of Appeals is

contrary to clearly established federal law. He does not cite any contradictory governing law set

forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that

would compel a different result. *See House*, 527 F.3d at 1018.

Mr. Mendoza also fails to demonstrate the state court's ruling was an unreasonable

application of clearly established federal law. In general, an instruction that follows the

applicable statutory language does not violate due process, *see Kennedy v. Delo*, 959 F.2d 112, 119 (8th Cir. 1992), and Mr. Mendoza does not dispute the state court's factual determination that the instruction in question tracked the applicable statute.  Furthermore, based on the Court's review of the jury instructions as a whole and the entire proceedings, the Court cannot conclude that the trial court's failure to define the commonly-understood phrase "from one place to another" infected the entire trial and resulted in a denial of due process.  *See Middleton*, 541 U.S. at 437.  Mr. Mendoza's speculation that the jury could have applied the instruction in question in an unconstitutional manner is not sufficient to demonstrate a constitutional violation.  *See Victor*, 511 U.S. at 6.  Thus, Mr. Mendoza fails to demonstrate the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. 786-87.  As a result, Mr. Mendoza is not entitled to relief on claim 2.

## C.  Claim 4

Mr. Mendoza contends in claim 4 that prosecutorial misconduct during closing argument violated his constitutional right to a fair trial.  He specifically argues as follows in support of claim 4:

> Twice, the prosecutor stated in closing argument that Mr. Mendoza went to the Maddox residence to act as an enforcer for a drug debt.  On both occasions, the defense objected, pointing out that there was no evidence of this. . . .

> There was, in fact, no evidence, direct or circumstantial, to support this claim that Mr. Mendoza was acting to enforce a drug debt for anyone.

> In the rebuttal phase of closing argument, the prosecution made a direct misstatement of evidence when it told the jury that Christopher Piotrowski testified that "[h]e saw Mendoza with a

rifle, a black and silver rifle." This was not, in fact, Piotrowski's testimony. Piotrowski specifically testified that he never saw any of the Hispanic men in possession of a rifle; he had, however seen a rifle in David Isassi's bedroom closet. The defense objected, but the trial court merely told the jury to rely upon its recollection. This was a critical misstatement of fact. The actual testimony in question associated the rifle with Isassi, an alternate suspect. It had been seen in his closet. The prosecutor's misstatement effectively transferred possession of the rifle from Isassi to Mr. Mendoza.

. . . [T]he prosecutor [also] argued at closing that Anita Rankin claimed there was already a driver waiting in the SUV before she fled from the condo, moments after the shooting. . . . But this was not Rankin's testimony. She testified that she jumped into the backseat of the SUV. She testified that one of the Hispanic males she had previously seen at Wilson's home was the driver. But she was not asked and did not testify that he was already "waiting" in the vehicle when the shooting occurred. This "fact" was simply manufactured by the prosecutor in order to establish some basis for the kidnapping theory. Though this particular misstatement of the evidence was not objected to, it could have spelled the difference between an acquittal and a conviction.

(ECF No. 22 at 18-19 (citations to the record omitted).)

The clearly established federal law relevant to a claim challenging a prosecutor's comments during closing argument is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam). In *Darden*, the Supreme Court explained that a prosecutor's improper comments violate the Constitution only when the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In order to determine whether prosecutorial misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v.*

*Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998). "[T]he *Darden* standard is a very general one,

leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*,

132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Colorado Court of Appeals analyzed Mr. Mendoza's claim of prosecutorial

misconduct as follows:

> Defendant argues that his right to a fair trial was violated because, in three different portions of closing argument, the prosecutor misstated the evidence. According to defendant, the following statements from the People's summation amount to prosecutorial misconduct: (1) defendant went to the condo to enforce a drug debt; (2) witness C.P. testified that he saw defendant with a rifle; and (3) witness A.R. testified that when she jumped into the back seat of a vehicle after the victim had been shot, there was a driver already in the vehicle. Defendant objected to the first two statements, and thus we review them for harmless error. *See People v. Griffith*, 58 P.3d 1111, 1113 (Colo. App. 2002) (portions of closing argument objected to by defendant reviewed for harmless error). The third statement drew no objection, and thus we review it for plain error. *See Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (defendants's failure to object to statement made during closing argument reviewed for plain error).

> "A claim of improper closing argument is evaluated in the context of the argument as a whole and in light of the evidence presented at trial." *People v. Whitaker*, __ P.3d __, __ (Colo. App. No. 01CA2340, Nov. 30, 2006); *see Griffith*, 58 P.3d at 1113.

> Here, when the prosecutor first stated that defendant was an enforcer for a drug debt, the court stated in response to defendant's objection, "I'll allow this argument for the jury to determine." The court's statement properly reminded the jury of its role to find the facts. When the prosecutor repeated the statement, defense counsel objected saying "There's no evidence of that." The court then sustained the objection. When defendant objected to the prosecutor's statement that C.P. saw defendant with a rifle, the court again reminded the jury of its role to remember the evidence and determine the facts. Accordingly, in light of the court's admonition, any error was harmless. *Cf. Whitaker*, __, P.3d at __

17

> (improper questioning of witness presumed cured when trial court sustained objection and instructed the jury to disregard the questioning); *People v. Johnson*, 701 P.2d 620, 623 (Colo. App. 1985) (improper definition of deadly weapon stated in closing argument not reversible error where objection was sustained and jury was instructed not to consider statements to which objections had been sustained).
>
> Finally, we reject defendant's argument that the prosecutor's third statement constituted plain error. Here, the evidence presented at trial was sufficient to support defendant's convictions, regardless of whether the driver was in the vehicle prior to the witness's entry. Further, the prosecutor's comment was brief and occurred only once during closing argument. We therefore conclude that the prosecutor's misstatement did not materially contribute to defendant's conviction, and thus did not result in plain error. *See People v. Grant*, __ P.3d __, __ (Colo. App. No. 03CA1034, Jan. 25, 2007) (prosecutor's brief misstatement of law during closing argument, when the jury was properly instructed by the court, not plain error).

(ECF No. 11-3 at 12-14.)

Mr. Mendoza fails to demonstrate that the decision of the Colorado Court of Appeals is contrary to clearly established federal law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Mr. Mendoza also fails to demonstrate that the state court's ruling was an unreasonable application of clearly established federal law. With respect to the comments regarding enforcement of a drug debt and that Mr. Mendoza was seen with a rifle, Mr. Mendoza does not dispute that the trial court both reminded the jury of its role as fact-finder and sustained the defense's objections. Under these circumstances, any possible prejudice was limited and the Court cannot conclude that the state court unreasonably applied *Darden's* very general standard. *See Littlejohn v. Trammell*, 704 F.3d 817, 838-39 (10th Cir. 2013) (finding state court's

conclusion that prosecutor's improper comment was removed from the jury's consideration when trial court sustained an objection and admonished the jury to disregard the comment was not unreasonable application of clearly established federal law); *see also Parker v. Allen*, 565 F.3d 1258, 1273 (11th Cir. 2009) (any prejudice from prosecutor's improper comments cured by extensive cautionary instructions).

With respect to the prosecutor's alleged misstatement of Anita Rankin's testimony regarding the driver of the vehicle she entered after the shooting, the state court relied on the fact that the evidence to support Mr. Mendoza's convictions was sufficient regardless of whether the driver was in the vehicle when Ms. Rankin entered.  As discussed above in connection with claim 1, the Court has determined Mr. Mendoza is not entitled to relief on his claim challenging the sufficiency of the evidence.  Thus, the state court's conclusion that the prosecutor's alleged misstatement of Anita Rankin's testimony regarding the driver of the vehicle she entered did not materially contribute to Mr. Mendoza's conviction also is not an unreasonable application of *Darden's* very general standard.

For these reasons, the Court cannot conclude that the state court's rejection of Mr. Mendoza's prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. 786-87.  Therefore, Mr. Mendoza is not entitled to relief on claim 4.

**D.  Claim 5**

Mr. Mendoza contends in claim 5 that he received ineffective assistance of counsel because (a) trial counsel based critical decisions regarding the theory of defense on an incorrect

interpretation of the law governing attempted second degree kidnapping; (b) trial counsel failed to request proper jury instructions regarding attempted kidnapping; and (c) counsel on direct appeal failed to properly frame the claim of instructional error regarding attempted second degree kidnapping.

It was clearly established when Mr. Mendoza was convicted that a defendant has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

To establish that counsel was ineffective, Mr. Mendoza must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Mr. Mendoza's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Under the prejudice prong, Mr. Mendoza must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.*; *see also Richter*, 131 S. Ct. at 792 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable."). In determining whether Mr. Mendoza has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Mendoza. *See Boyd*, 179 F.3d at 914.

If Mr. Mendoza fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claims must be dismissed. *See Strickland*, 466 U.S. at 697. Furthermore, conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).

**1. Claim 5(a)**

Mr. Mendoza contends in claim 5(a) that he received ineffective assistance of counsel because trial counsel based critical decisions regarding the theory of defense on an incorrect interpretation of the law governing attempted second degree kidnapping. More specifically, he argues as follows:

> Here, it is clear from the testimony provided by trial counsel Mr. Vance, the testimony from trial expert Ms. Weiner, and the court record and transcripts, that Mr. Vance provided ineffective assistance of counsel because his fundamental misunderstanding of the law of kidnapping resulted in a failure to pursue valid defenses, in all phases of the trial; this failure was not the result of strategy, but the result of a fundamental misunderstanding of the applicable law.
>
> Mr. Vance made a significant error in not arguing that Mr. Mendoza did not take a substantial step towards moving the victim in a substantial wa[y] or that the movement was insubstantial and did not increase the risk of harm, and this argument should have been raised during the preliminary hearing, opening statement, direct and cross examinations, and closing argument. The attempted second d[e]gree kidnapping count should have been disputed throughout the entire trial. However, as Mr. Vance testified, this failure was simply a mistake, a mistake in judgment,

21

and a mistake about the law.

> "After I read the motion for judgment of acquittal I made and I read the response by the prosecutor and response by Judge Bockman – it appeared to me that everybody but me understood what a completed act of kidnapping was.  And because of that I did not make the proper argument, and because of that I did not focus [m]y cross-examination correctly, and because of that I did not make the proper argument on closing argument."

(ECF No. 22 at 27 (citation to the record omitted).)

The Colorado Court of Appeals applied the two-part *Strickland* test and rejected this ineffective assistance of counsel claim because Mr. Mendoza failed to demonstrate he suffered any prejudice.

> We first reject defendant's argument that trial counsel was ineffective when he failed to make any argument or cross-examine witnesses about the movement of the victim due to his misunderstanding of what was required to prove the asportation element of second degree kidnapping.  Even if trial counsel's performance was deficient, defendant has not shown that he was prejudiced.
>
> Defendant was charged with *attempted* second degree kidnapping, not with the underlying crime of kidnapping itself.  If defendant had been charged with the crime of second degree kidnapping, the prosecution would have been required to prove that he "knowingly seize[d] and carrie[d]" the victim "from one place to another, without his consent and without lawful justification."  § 18-3-302(1), C.R.S. 2012.  Additionally, for the evidence to be sufficient to support the conviction, the prosecution would have needed to show that the movement of the victim was either substantial or that the insubstantial movement substantially increased the risk of harm to the victim.  *See People v. Owens*, 97 P.3d 227, 235 (Colo. App. 2004).
>
> However, to prove that defendant committed the crime of *attempted* second degree kidnapping, the prosecution was not required to prove every element of the completed crime of second degree kidnapping.  Instead, the prosecution needed to prove only that defendant acted with the same kind of culpability necessary

22

for second degree kidnapping (knowingly) and took a substantial step toward commission of the crime. *See* § 18-2-101(1), C.R.S. 2012; *Apodaca v. People*, 712 P.2d 467, 475 (Colo. 1985); *People v. Joyce*, 68 P.3d 521, 525 (Colo. App. 2002). "[A] substantial step means conduct that strongly corroborates the actor's purpose to forcibly or otherwise seize and carry away any person from one place to another without the person's consent and without lawful justification." *Apodaca*, 712 P.2d at 475 n.10; *see also* § 18-2-101(1).

Thus, to convict defendant of attempted second degree kidnapping, the jury did not need to find that the movement of the victim was substantial or that, if it was insubstantial, the movement substantially increased the risk of harm to the victim. We therefore conclude that there is not a reasonable probability that the result of the proceeding would have been different if trial counsel had made the argument and cross-examined the witnesses about the movement of the victim. *See Karpierz*, 165 P.3d at 759.

Moreover, even if counsel had done so, there was still evidence that defendant used a rifle or shotgun to force the victim to move from the kitchen to the living room and then toward the front door for the purpose of forcing him outside, where he could be assaulted or driven or otherwise removed to another location. In the course of that movement, the victim was ultimately shot and killed. As the division in *Mendoza I* concluded, this evidence was sufficient for the jury to conclude that defendant took a substantial step toward the completed crime of second degree kidnapping.

In any event, defendant has not show prejudice because he failed to demonstrate what the testimony of the witnesses would have been if trial counsel had cross-examined them. Although trial counsel testified that he would have questioned certain witnesses about the movement of the victim and whether there was a plan to move the victim to a waiting car or elsewhere, there was no showing of what the witnesses' responses would have been. *See, e.g., People v. Gandiaga*, 70 P.3d 523, 526 (Colo. App. 2002) (the defendant failed to demonstrate prejudice based on ineffective assistance of counsel where he failed to produce any evidence or make an offer of proof at the Crim. P. 35(c) hearing with respect to the substance, credibility, or admissibility of testimony that counsel failed to present at trial); *People v. Chambers*, 900 P. 2d 1249, 1252 (Colo. App. 1994) (the defendant failed to show that he was prejudiced by counsel's alleged failure to investigate

23

> witnesses to support his theory of defense because he did not
> produce any evidence at the Crim. P. 35(c) hearing about who the
> witnesses would have been, their willingness to testify, and the
> substance, credibility or admissibility of their testimony).
>
> Under these circumstances, we conclude that the district
> court properly denied defendant's claim that trial counsel was
> ineffective on this basis.

(ECF No. 11-7 at 6-10.)

Mr. Mendoza fails to demonstrate that the decision of the Colorado Court of Appeals rejecting claim 5(a) was contrary to clearly established law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Mr. Mendoza also fails to demonstrate that the state court's rejection of claim 5(a) was an unreasonable application of *Strickland*. Mr. Mendoza argues extensively that counsel's performance was deficient. However, he fails to demonstrate the state court unreasonably applied the prejudice prong of the *Strickland* analysis. Mr. Mendoza's arguments regarding prejudice primarily are premised on the same arguments he raised in support of his insufficient evidence claim. However, the state court reasonably determined that those arguments lack merit for the same reasons the insufficient evidence claim discussed above lacks merit. In short, the prosecution did not need to prove all of the elements of second degree kidnapping in order to convict Mr. Mendoza of attempted second degree kidnapping. Thus, Mr. Mendoza is not entitled to relief on claim 5(a) because the state court's rejection of that claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87.

**2. Claim 5(b)**

24

Mr. Mendoza contends in claim 5(b) that trial counsel failed to request proper jury

instructions regarding attempted kidnapping.  According to Mr. Mendoza, "[i]n this matter,

effective counsel would have requested jury instructions defining the 'one place to another'

element of attempted second degree kidnapping because the evidence presented showed

unsubstantial movement."  (ECF No. 22 at 28.)  He further contends that "[t]he failure of trial

counsel to request the correct jury instruction resulted in an instructional error here that deprived

Mr. Mendoza of his United States Constitutional right to due process."  (*Id.* at 31.)  As noted

above in discussing claim 2, Mr. Mendoza is not entitled to relief on his due process claim

challenging the adequacy of the jury instructions.

The Colorado Court of Appeals applied *Strickland* to claim 5(b) and determined that

counsel was not ineffective.

> We also reject defendant's contention that trial counsel was
> ineffective for failing to request an instruction explaining the
> asportation element of second degree kidnapping because the
> movement of the victim was insubstantial and there was no
> evidence that the movement resulted in substantially increased
> harm to the victim.
>
> The court was not required to give the jury such an
> instruction.  "The seizing and carrying of a person from one place
> to another is the basic asportation element of kidnapping."  *Owens*,
> 97 P.3d at 237.  But "a substantial increase in the risk of harm is
> not a material element of the crime upon which a jury must be
> instructed."  *Id.*  "It is, instead, only 'a factual circumstance
> reviewing courts consider in some cases to determine whether
> there is sufficient evidence to prove that the defendant moved the
> victim from one place to another.'"  *Id.* (quoting *People v. Harlan*,
> 8 P.3d 448, 476 (Colo. 2000), *overruled on other grounds by
> People v. Miller*, 113 P.3d 743 (Colo. 2005)).
>
> Here, the court instructed the jury about the elements of
> second degree kidnapping and criminal attempt to commit
> kidnapping, tracking sections 18-2-101(3) and 18-3-302(1).  *See*

> *People v. Weinreich*, 119 P.3d 1073, 1076 (Colo. 2005) (a jury
> instruction that is framed in the language of the statute is usually
> adequate and proper); *People v. Zukowski*, 260 P.3d 339, 343
> (Colo. App. 2010) (same).  Those instructions were sufficient.  *See*
> *Owens*, 97 P.3d at 237.  Because the instruction defendant now
> contends should have been given was not necessary to adequately
> instruct the jury, counsel's performance did not fall below an
> objective standard of reasonableness when he did not request it.
> We therefore conclude that the district court properly denied
> defendant's claim that trial counsel was ineffective for failing to
> request the instruction.

(ECF No. 11-7 at 10-12.)

Mr. Mendoza fails to demonstrate the decision of the Colorado Court of Appeals rejecting claim 5(b) was contrary to clearly established law.  He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.

Mr. Mendoza also fails to demonstrate that the state court's rejection of claim 5(b) was an unreasonable application of *Strickland*.  Most importantly, Mr. Mendoza fails to demonstrate that an instruction defining the asportation element of second degree kidnapping was necessary under Colorado law.  Because the instruction was unnecessary under state law, the Colorado Court of Appeals reasonably concluded that counsel's failure to request the instruction was not deficient performance under *Strickland*.  Thus, Mr. Mendoza is not entitled to relief on claim 5(b).

### 3.  Claim 5(c)

Finally, Mr. Mendoza contends in claim 5(c) that counsel on direct appeal failed to properly frame the claim of instructional error regarding attempted second degree kidnapping.  Mr. Mendoza specifically contends in support of claim 5(c) that appellate counsel was

ineffective by failing to cite *People v. Bell*, 809 P.2d 1026 (Colo. App. 1990), in support of the argument that the jury should have been instructed on the meaning of the phrase "from one place to another."

The Colorado Court of Appeals rejected this ineffective assistance of counsel for the following reasons:

> Finally, we conclude that appellate counsel was not ineffective for failing to cite to *Bell* in support of the instructional error issue in *Mendoza I*. In *Bell*, the issue was whether there was sufficient evidence to support the defendant's conviction of second degree kidnapping, not *attempted* second degree kidnapping. *See Bell*, 809 P.2d at 1033. Further, the division in *Bell* did not address the defendant's argument that there was instructional error. *See id.* Because *Bell* did not address any instructional error, appellate counsel was not ineffective for failing to cite that case.

(ECF No. 11-7 at 12.)

Mr. Mendoza fails to demonstrate the decision of the Colorado Court of Appeals rejecting claim 5(c) was contrary to clearly established law. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Mr. Mendoza also fails to demonstrate that the state court's rejection of claim 5(c) was an unreasonable application of *Strickland*. In short, Mr. Mendoza fails to demonstrate *Bell's* analysis of the evidence sufficient to support a conviction for second degree kidnapping is relevant to his claim of instructional error regarding the offense of attempted second degree kidnapping. Therefore, he fails to demonstrate that the state court's rejection of claim 5(c) was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87. As a

result, Mr. Mendoza is not entitled to relief on claim 5(c).

## V.  CONCLUSION

In summary, the Court finds that Mr. Mendoza is not entitled to relief on any of his remaining claims.  Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is denied and this case is dismissed with prejudice.  It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED January 23, 2015.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge